**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**CIVIL CASE NO. 1:21-cv-00068-MR**

| | | |
|---|---|---|
| JONATHAN ANTHONY LEE TORRES | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| TODD ISHEE, et al., | ) | <u>ORDER</u> |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on initial review of the *pro se* Complaint [Doc. 1]. Also pending is Plaintiff's Motion for Preliminary Injunction [Doc. 10]. Plaintiff is proceeding *in forma pauperis*. [Doc. 8].

## I. BACKGROUND

The *pro se* incarcerated Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 for incidents that allegedly occurred at the Marion Correctional Institution. The Plaintiff names as Defendants the North Carolina Department of Public Safety ("NCDPS"); Todd Ishee, the NCDPS director of prisons; Ben Carver, the Marion CI superintendent; FNU Bullis, the Marion CI superintendent of operations; David Cothron, the Marion CI assistant superintendent of programs; Greg Swink, the Marion CI Rehabilitative Diversion Unit ("RDU") program supervisor; FNU Suttle, the

RDU assistant program supervisor; and Mark Ervin, the head programmer. In his Complaint, the Plaintiff alleges that the Defendants are enforcing an unconstitutional rehabilitative diversion unit ("RDU") program at Marion CI. [Doc. 1 at 4]. For relief, the Plaintiff seeks a declaratory judgment; injunctive relief including the restoration of all the Plaintiff's rights, privileges, and lost gain time; compensatory and punitive damages; costs and attorney's fees; and such other relief as the Court deems just and proper. [Id. at 5]. By way of a "Motion for Preliminary Injunction," the Plaintiff seeks to be transferred to another state prison outside of the Western District of North Carolina due to safety concerns. [Doc. 10].

## II.    STANDARD OF REVIEW

Because the Plaintiff is proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see 28 U.S.C. § 1915A (requiring frivolity review for prisoners' civil actions seeking redress from governmental entities, officers, or employees).

In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly

baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

### A. Parties

The body of the Complaint contains allegations against several individuals who are not named as defendants in the caption as required by Rule 10(a). This failure renders the Plaintiff's allegations against them nullities. See, e.g., Londeree v. Crutchfield Corp., 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999) (granting motion to dismiss for individuals who were not named as defendants in the compliant but who were served). The

allegations directed at individuals not named as Defendants are therefore dismissed without prejudice.

The Plaintiff names NCDPS as a Defendant and he purports to sue the other Defendants, who are state officials, in both their individual and official capacities. However, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Dep't of State Police, 491 U.S. 58, 71 (1989). Because a state is not a "person" under § 1983, state officials acting in their official capacities cannot be sued for damages thereunder. Allen v. Cooper, No. 1:19-cv-794, 2019 WL 6255220, at *2 (M.D.N.C. Nov. 22, 2019). Furthermore, the Eleventh Amendment bars suits for monetary damages against the State of North Carolina and its various agencies. See Ballenger v. Owens, 352 F.3d 842, 844-45 (4th Cir. 2003). As such, the Plaintiff's claims against NCDPS, and against the other Defendants in their official capacities, do not survive initial review and therefore are dismissed with prejudice.

Finally, the Complaint addresses conditions that allegedly affected inmates other than the Plaintiff. As a *pro se* inmate, the Plaintiff is not qualified to assert claims on behalf of others. See Myers v. Loudoun Cnty. Pub. Schls., 418 F.3d 395, 400 (4th Cir. 2005) ("An individual unquestionably has the right to litigate his own claims in federal court.... The right to litigate

for oneself, however, does not create a coordinate right to litigate for others");

Hummer v. Dalton, 657 F.2d 621, 625 (4th Cir. 1981) (prisoner's suit is "confined to redress for violations of his own personal rights and not one by him as knight-errant for all prisoners."); Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) ("it is plain error to permit [an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action."). Therefore, the Plaintiff's claims asserted on behalf of others are dismissed with prejudice.

## B. Conditions of Confinement

Throughout his 38-page Complaint, the Plaintiff appears to allege that Defendants Bullis, Carver, Cothron, Ervin, Swink, and Suttle are providing unconstitutional conditions of confinement at Marion CI including, *inter alia*, inhumane solitary confinement, unsanitary conditions, ineffective and overly restrictive COVID-19 restrictions.   [Doc. 1].

The Constitution "does not mandate comfortable prisons, ... but neither does it permit inhumane ones."   Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)).   To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials

acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297-99 (1991). Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim. Hudson v. McMillian, 503 U.S. 1, 8–9 (1992). To be sufficiently serious, the deprivation must pose a "serious or significant physical or emotional injury resulting from the challenged condition," or a "substantial risk of serious harm resulting from ... exposure to the challenged conditions." Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016) (quoting De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003)).

Taking the allegations as true for the purposes of initial review, and construing all inferences in the Plaintiff's favor, the Court concludes that the Plaintiff has stated an Eighth Amendment claim against Defendants Bullis, Carver, Cothron, Ervin, Swink, and Suttle that is sufficient to survive initial review with respect to the conditions of his confinement.

## C. Due Process

The Plaintiff complains that he was involuntarily placed in the RDU without due process. [See Doc. 1 at 3, 23].

In order to establish a due process violation, "a plaintiff must first show that he has a constitutionally protected 'liberty' or 'property' interest, and that he has been 'deprived' of that protected interest by some form of 'state

6

action.'" Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988) (citations omitted).  If a plaintiff makes such showing, the court then considers what process was required and whether any provided was adequate in the particular factual context.  Id.

There is no constitutional right for an inmate to be housed in a particular institution, at particular custody level, or in a particular portion or unit of a correctional institution.  See Sandin v. Conner, 515 U.S. 472, 484 (1995); Meachum v. Fano, 427 U.S. 215, 224 (1976) (prisoners do not have a right to due process in their housing assignments).  Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison."  Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991).  As such, a prisoner does not have a right to due process before placement in a more restrictive housing placement unless the conditions impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 484 (citing Wolff v. McDonnell, 418 U.S. 539 (1974)); Wilkinson v. Austin, 545 U.S. 209, 210 (2005).

7

Whether confinement conditions are atypical and substantially harsh is a "necessarily ... fact specific" comparative exercise. Beverati v. Smith, 120 F.3d 500, 502-03 (4th Cir. 1997) (quoting Sandin, 515 U.S. at 483-84). For safety or security reasons, "prisons and jails may and routinely do place inmates charged with disciplinary infractions in 'administrative segregation' pending their disciplinary hearings, allowing both prison officials and inmates time to investigate and prepare for those hearings." Dilworth v. Adams, 841 F.3d 246, 255 (4th Cir. 2016); see McKune v. Lile, 536 U.S. 24, 26 (2002) (stating that the "decision where to house inmates is at the core of prison administrators' expertise"). Whether such constitutes an atypical and significant hardship turns primarily on: (1) the magnitude of confinement restrictions; (2) whether the administrative segregation is for an indefinite period; and (3) whether the assignment to administrative segregation had any collateral consequences on the inmate's sentence. Smith v. Collins, 964 F.3d 266, 276 (4th Cir. 2020).

The Plaintiff appears to allege that he was placed in the RDU without due process. This claim fails insofar as the Plaintiff had no right to any particular classification during his imprisonment. To the extent that he complains that the conditions of the RDU presented atypical and significant hardship in relation to the ordinary incidents of prison life, his allegations are

self-defeating. The Plaintiff is considered a "general population" inmate at Marion CI, a specialized RDU institution. His attempt to equate RDU's general population with the general population at non-RDU institutions is unavailing. The Plaintiff admits that his numerous serious disciplinary infractions qualified him for RHCP housing and triggered his placement in RDU. See generally Porter v. Clarke, 923 F.3d 348 (4th Cir. 2019) ("a legitimate penological justification can support prolonged detention of an inmate in segregated or solitary confinement…."). He fails to explain how the RDU conditions he is experiencing at Marion CI present a significant and atypical hardship as compared to the conditions he would experience at a non-RDU facility based upon his serious infraction record.[1] Indeed, the RDU program is a "step-down program unit" that is intended to allow control inmates to transition to regular population. See Covington v. Lassiter, 2017 WL 3840280 (W.D.N.C. Sept. 1, 2017). He has failed to plausibly allege that the RDU conditions are atypical or significant as compared with the conditions he would otherwise experience at a non-RDU prison. See, e.g., James-Bey v. N.C. Dep't of Public Safety, 2019 WL 5198490 (W.D.N.C. Oct. 15, 2019) (dismissing procedural due process RDU claim on initial review);

_____

[1] The Plaintiff does not allege in his Complaint that he was denied due process in the disciplinary proceedings that led to his RDU placement.

<u>Watson v. Jenkins</u>, 2019 WL 4780860 (W.D.N.C. Sept. 30, 2019) (same). Moreover, the Plaintiff fails to allege which, if any, of the Defendants are responsible for placing him in the RDU program.  Therefore, the Plaintiff's claim that his placement in the RDU violated due process is dismissed.

### D. Equal Protection

The Plaintiff alleges that the Defendants are violating equal protection by failing to grant him the same privileges and conditions as general population inmates at other prisons.  He also appears to claim that he was unfairly classified as an SRG gang member because he has "certain ink." [Doc. 1 at 37].

The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1.  The equal protection requirement "does not take from the States all power of classification," <u>Personnel Adm'r v. Feeney</u>, 442 U.S. 256, 271 (1979), but "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike."  <u>Nordlinger v. Hahn</u>, 505 U.S. 1, 10 (1992).  To succeed on an equal protection claim, a § 1983 plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of

intentional or purposeful discrimination."  Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

As discussed in Section (C), *supra*, general population at Marion CI is not equivalent to general population at non-RDU prisons.  The Plaintiff has failed to plausibly allege that he is being treated differently from any similarly situated Marion CI inmate, or any inmate outside the RDU who has an equivalent disciplinary record.  With regards to the SRG classification based on Plaintiff's tattoos, he has failed to allege that he is being treated differently from any similarly tattooed inmates.  Moreover, his allegation that the SRG designation and its attendant restrictions are discriminatory is self-defeating; he admits that he has had numerous disciplinary infractions for SRG activity.  See Jones v. N.C. Prisoners' Labor Union, Inc., 433 U.S. 119, 136 (1977) ("There is nothing in the Constitution which requires prison officials to treat all inmate groups alike where differentiation is necessary to avoid an imminent threat of institutional disruption or violence.").  Therefore, the Plaintiff's equal protection claims are dismissed.

### E.    Double Jeopardy

The Plaintiff contends that the application of NCDPS disciplinary sanctions, classification as RHCP, placement in the RDU, and application of the RDU sanction matrix violate double jeopardy.  [Doc. 1 at 3].

The Double Jeopardy Clause prevents a person from being "twice put in jeopardy of life or limb." U.S. Const. Am. XIII. The Clause applies when an individual placed at risk of "multiple criminal punishments for the same offense." Hudson v. United States, 522 U.S. 93, 99 (1997).

Prison disciplinary sanctions are not criminal punishments, so the Double Jeopardy Clause does not apply. See, e.g., United States v. Moss, 445 F. App'x 632 (4th Cir. 2011) (disciplinary charges in prison do not preclude criminal punishment for the same conduct); Patterson v. United States, 183 F.2d 327, 328 (4th Cir.1950) (same). Therefore, the Plaintiff's double jeopardy claim is dismissed.

## F.    Deliberate Indifference to a Serious Medical/Mental Need

The Plaintiff appears to allege that he was denied adequate medical and mental health care at Marion CI. [See Doc. 1 at 34].

The constitutional guarantee to be free from cruel and unusual punishment encompasses a right to medical care for serious medical needs, including psychological needs. See Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). To state a claim for deliberate indifference to a serious medical or psychological need, a plaintiff must show that he had serious medical needs and that the defendant acted with deliberate indifference to those needs. Heyer v. United States Bureau of Prisons, 849 F.3d 202, 210 (4th Cir. 2017)

(citing <u>Iko v. Shreve</u>, 535 F.3d 225, 241 (4th Cir. 2008)).  A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  <u>Iko</u>, 535 F.3d at 241 (internal quotation marks omitted).  To constitute deliberate indifference to a serious medical need, "the treatment [a prisoner receives] must be so grossly incompetent, inadequate, or excessive to shock the conscience or to be intolerable to fundamental fairness."  <u>Miltier v. Beorn</u>, 896 F.2d 848, 851 (4th Cir. 1990), <u>overruled on other grounds by</u> <u>Farmer</u>, 511 U.S. at 825.  However, mere negligence or malpractice does not violate the Eighth Amendment.  <u>Miltier</u>, 896 F.2d at 852.

The Plaintiff's allegations about the adequacy of the medical and mental health care at Marion CI are too vague and conclusory to support relief.  <u>See</u> <u>generally</u> Fed. R. Civ. P. 8(a)(2) (short and plain statement is required); <u>Simpson v. Welch</u>, 900 F.2d 33, 35 (4th Cir. 1990) (conclusory allegations, unsupported by specific allegations of material fact are not sufficient); <u>Dickson v. Microsoft Corp.</u>, 309 F.3d 193, 201-02 (4th Cir. 2002) (a pleader must allege facts, directly or indirectly, that support each element of the claim).  As to medical care, the Plaintiff does not allege that he has a serious medical need or that he was denied adequate treatment for such.

13

As to mental health care, the Plaintiff alleges generally that he has experienced sudden mood changes, anger, and sleep issues. [Doc. 1 at 34]. He also complains that mental health personnel do not conduct rounds. [Id.]. Even if Plaintiff's allegations were sufficient to assert that his mental health complaints constitute a serious mental need, he admits that he has received mental health services and he fails to allege that the services he received were inadequate in any way. [See id.]. The Plaintiff's assertion that staff should conduct mental health rounds fails to state a deliberate indifference claim. See generally Wright v. Collins, 766 F.2d 841, 849 (4th Cir.1985) (a "[d]isagreement[ ] between an inmate and a physician over the inmate's proper medical care," and we consistently have found such disagreements to fall short of showing deliberate indifference). Therefore, the Plaintiff's claim of deliberate indifference to a serious medical or mental health need is dismissed.

### G. Religious Exercise

Construing the Complaint liberally, the Plaintiff appears to allege that he has been denied the ability to freely exercise his religion. [Doc. 1 at 22] (alleging that general population inmates at other institutions are allowed "access to religious services").

To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief and that the official action or regulation substantially burdened his exercise of that belief. See generally Hernandez v. C.I.R., 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

The Plaintiff's allusion to religious exercise fails to state a First Amendment claim. The Plaintiff does not allege facts sufficient to demonstrate that he has a sincerely held religious belief which the Defendants substantially burdened. Therefore, to the extent that the Plaintiff attempted to raise a religious free exercise claim, it will be dismissed.

## H. Mail

The Plaintiff complains that Marion CI rejects more mail than any other facility. [Doc. 1 at 34].

As a general matter, prisoners have the First Amendment right to both send and receive mail. See Thornburgh v. Abbott, 490 U.S. 401, 408 (1989); Pell v. Procunier, 417 U.S. 817 (1974). Restrictions on this right are valid if they are reasonably related to legitimate penological interests. Turner v.

Safley, 482 U.S. 78, 89 (1987); see Haze v. Harrison, 961 F.3d 654, 658 (4th Cir. 2020) (noting that Turner applies to both convicted prisoners and pretrial detainees). For instance, a prisoner's First Amendment interest in corresponding does not preclude prison officials from examining mail to ensure that it does not contain contraband. Wolff v. McDonnell, 418 U.S. 539, 576 (1974).

The Plaintiff's general dissatisfaction with the mail system at Marion CI is too vague and conclusory to state a § 1983 claim. The Plaintiff fails to allege that his own right to send and receive mail has been violated or that any Defendant is responsible for such. Moreover, the fact that a high percentage of the prison's mail is rejected, by itself, does not plausibly allege any constitutional violation. Therefore, this claim will be dismissed.

## I. Policy Violations

Throughout his Complaint, the Plaintiff alleges that various practices at Marion CI violate NCDPS Policy & Procedures. However, the violation of prison policy, without more, is insufficient to establish a § 1983 claim. See Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir. 2013) (unpublished) (holding that "prison officials' failure to follow internal prison policies are not actionable under § 1983 unless the alleged breach of policy rises to the level of constitutional violation"). To the extent that the alleged violations of

16

NCDPS policy do not themselves rise to the level of a § 1983 claim, the Plaintiff's claims regarding violations of prison policy are insufficient to proceed and are dismissed.

**J.    Gain Time**

The Plaintiff argues that, because the RDU is a full-time program and he receives a certificate after completing each phase, he should be eligible for 9 gain days per month pursuant to NCDPS policy and merit time for each certificate earned.  [Doc. 1 at 38-39].  However, he alleges that none of this is honored at Marion CI, which has prolonged Plaintiff's sentence due to "RDU malicious acts."  [Id.].  He seeks the restoration of his gain time.  [Id. at 5].

The Plaintiff's request for the restoration of gain time is not cognizable under § 1983.  "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."  Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); see Heck v. Humphrey, 512 U.S. 477, 487 n.7 (1994) (stating that damages are recoverable only for an "actual, compensable injury," which "does not encompass the 'injury' of being convicted and imprisoned (until [the] conviction has been overturned)").

The Plaintiff's claim for the restoration of gain time is therefore dismissed.

### K.    Supervisory Liability

The Plaintiff appears to assert that Defendants Carver, Cothron, Ervin, Ishee, and Swink are liable as supervisors for the systematic and knowing violation of his constitutional rights.  [Doc. 1 at 13-17].

"It is well settled that 'supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates.'" Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001) (quoting Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994)).  A supervisor can be liable where (1) he knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) his response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) there was an "affirmative causal link" between her inaction and the constitutional injury."  Shaw, 13 F.3d at 799 (internal quotation marks omitted).

Taking the allegations as true for the purposes of initial review, and construing all inferences in the Plaintiff's favor, he has stated a supervisory liability claim against Defendants Carver, Cothron, Ervin, Ishee, and Swink regarding the conditions of his confinement.  See Section (B), *supra.*  This

claim has survived initial review. However, the supervisory claims that are based on allegations that did not pass initial review are dismissed without prejudice.

## L.   Motion for Preliminary Injunction

Finally, the Plaintiff asks the Court to enter a preliminary injunction for a transfer out of the Western District.  [Doc. 10].

Preliminary injunctive relief is an extraordinary remedy afforded before trial at the discretion of the district court.  In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 524-26 (4th Cir. 2003).  It is an extraordinary remedy never awarded as of right.  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008).  In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."  Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 542 (1987).  "[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."  Winter, 555 U.S. at 24.  To obtain a preliminary injunction, the plaintiff must establish (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. Id. at 20.

The Plaintiff conclusively asserts that he satisfies the <u>Winter</u> factors. He further alludes to an alleged use of excessive force incident on April 11, 2021 by two Marion CI employees who are not Defendants in this case. He claims that, since the excessive force incident, he has been placed on RDU non-participant status that has resulted in restrictions on his legal materials and law books. He fears he will be injured in a future assault and that he will experience retaliation. [Doc. 10].

Here, the Plaintiff has not established any of the elements that would warrant preliminary injunctive relief. The Court will, therefore, deny the Plaintiff's Motion.

## IV. CONCLUSION

In sum, the Plaintiff's claim for unconstitutional conditions of confinement has passed initial review against Defendants Bullis, Carver, Cothron, Ervin, Swink, and Suttle, as has the claim of supervisory liability with regards to the conditions of confinement against Defendants Carver, Cothron, Ervin, Ishee, and Swink. The claims asserted against NCDPS, against the Defendants in their official capacities, and on behalf of other inmates are dismissed with prejudice. The remaining claims are dismissed without prejudice.

The Court will allow the Plaintiff thirty (30) days to amend his Complaint, if he so chooses, to correct the deficiencies identified in this Order and to otherwise properly state a claim upon which relief can be granted. Any Amended Complaint will be subject to all timeliness and procedural requirements and will supersede the Complaint. Piecemeal amendment will not be permitted. Should Plaintiff fail to timely amend his Complaint in accordance with this Order, the matter will proceed only against Defendants Bullis, Carver, Cothron, Ervin, Ishee, Swink, and Suttle as set forth above. The Plaintiff's Motion for Preliminary Injunction is denied.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

1. The claims against Defendants Bullis, Carver, Cothron, Ervin, Swink, and Suttle for unconstitutional conditions of confinement, and against Defendants Carver, Cothron, Ervin, Ishee, and Swink for supervisory liability have passed initial review.

2. The claims against NCDPS, against the Defendants in their official capacities, and asserted on behalf of others are **DISMISSED WITH PREJUDICE.**

3. The remaining § 1983 claims are **DISMISSED WITHOUT PREJUDICE**.

21

4.    The Plaintiff shall have thirty (30) days in which to amend the Complaint in accordance with the terms of this Order.  If the Plaintiff fails to so amend his Complaint, the matter will proceed against Defendants Bullis, Carver, Cothron, Ervin, Ishee, Swink, and Suttle as provided in this Order.

5.    The Plaintiff's Motion for Preliminary Injunction [Doc. 10] is **DENIED**.

6.    The Clerk of Court is respectfully instructed to mail the Plaintiff a blank § 1983 prisoner complaint form, and an Opt-In/Opt-Out form pursuant to Standing Order 3:19-mc-00060-FDW.

**IT IS SO ORDERED.**

Signed: November 8, 2021

Martin Reidinger
Chief United States District Judge