**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**CIVIL CASE NO. 1:21-cv-00068-MR**

| | | |
|---|---|---|
| **JONATHAN ANTHONY LEE TORRES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **TODD ISHEE, et al.,** | ) | **ORDER** |
| | ) | |
| **Defendants.** | ) | |
| ________________________________ | ) | |

**THIS MATTER** is before the Court on initial review of the *pro se* Amended Complaint [Doc. 21]. The Plaintiff is proceeding *in forma pauperis.* [Doc. 8].

## I. BACKGROUND

The *pro se* Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred in the Rehabilitative Diversion Unit ("RDU") program at the Marion Correctional Institution, where he is still incarcerated. On November 8, 2021, the Court conducted an initial review of the Complaint. [Doc. 16]. Specifically, the Court allowed the Plaintiff to proceed with his Eighth Amendment claims for unconstitutional conditions of confinement against Defendants Bullis, Carver, Cothron, Ervin, Swink, and Suttle and his claims for supervisory liability against Defendants

Carver, Cothron, Ervin, Ishee, and Swink. [Id. at 20-22]. The Court dismissed with prejudice the Plaintiff's claims asserted against the North Carolina Department of Public Safety ("NCPDS"), the claims asserted against the Defendants in their official capacities, and the claims asserted on behalf of other prisoners. [Id.]. The Court dismissed without prejudice the Plaintiff's § 1983 claims based on due process, equal protection, and double jeopardy violations; deliberate indifference to serious medical/mental needs; the denial of his right to freely exercise his religion; interference with mail; violations of NCDPS policy and procedures; loss of gain time; and supervisory liability claims based on allegations that did not pass initial review. [Id.]. The Plaintiff was given the opportunity to amend his Complaint in order to address the deficiencies identified in the Court's Order. [Id.].

The Amended Complaint is now before the Court for initial review. [Doc. 21]. The Plaintiff continues to assert claims based on unconstitutional conditions of confinement; violations of due process and equal protection; the infringement of his religious exercise; interference with his mail; and violations of NCDPS policies and procedures. The Plaintiff seeks to assert a new claim for retaliation; to assert a new claim of excessive force; to assert a new claim of *respondeat superior*; to assert new allegations regarding the conditions of his confinement; and to add the following additional

Defendants: Cindy Haynes, and FNU Bumgardner, RDU program supervisors; FNU Coffee and FNU Ingram, correctional sergeants; and FNU Brendle, a correctional captain and SRG supervisor for RDU.

The Court notes that the Plaintiff filed a separate action, Case No. 1:21-cv-157-MR naming overlapping Defendants and presenting largely duplicative claims as the Amended Complaint in the instant case. Case No. 1:21-cv-157 has been dismissed as duplicative of this action, and accordingly, the Plaintiff will be granted another opportunity to amend in the instant case to add any additional claims or allegations asserted in Case No. 1:21-cv-157 in the present action.

## II. STANDARD OF REVIEW

Because the Plaintiff is proceeding in forma pauperis, the Court must review the Amended Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. § 1915A.

In its frivolity review, this Court must determine whether the Amended Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

### A. Parties

To the extent that the Amended Complaint contains allegations against individuals who are not named as defendants, and which are asserted on behalf of other inmates, such claims are dismissed for the reasons set forth in the original Order on initial review. [Doc. 16 at 3-5].

### B. Conditions of Confinement

The Plaintiff appears to allege that the Defendants are exposing him to unconstitutional conditions of confinement in the RDU. [Doc. 21 at 4, 32-38]. For the reasons stated in its prior Order [Doc. 16], the Court concludes that

the Plaintiff's claims for unconstitutional conditions of confinement, as stated against all the named Defendants, are sufficient to survive initial review.

### C. Due Process

The Plaintiff alleges that: Defendants Cothron and Swink placed him in the RDU without due process [Doc. 21 at 23-27]; and the RDU Sanction Matrix permits punishment without due process [id. at 27; see Doc. 1-1 at 33].

For the reasons previously stated, the Plaintiff's claims of due process violations based on his RDU placement fail to state a claim. [See Doc. 16 at 6-10]. His allegations about the RDU Sanction Matrix are insufficient to state a claim because no process is required for the restriction of privileges, and the Plaintiff fails to explain how sanctions such as segregated housing are more severe than those which he would experience outside RDU in light of his SRG classification and disciplinary history. Therefore, these claims are dismissed.

### D. Equal Protection

The Plaintiff, who is identified on the NCDPS website as "Hispanic/Latino,"[1] alleges that: most RDU inmates are people of color; RDU

[1] See chrome-extension://hehijbfgiekmjfkfjpbkbammjbdenadd/nhc.htm#url=https://web

supervisors are "older white people" who conspire to violate the rights of people of color[2] [Doc. 21 at 25]; the Plaintiff is treated differently from "close custody general pop" inmates who are not in RDU [id. at 29-30]; and he was validated as SRG because he has a "13" tattoo that is similar to tattoos on white and Spanish inmates and staff[3] [id. at 30-31]. The Plaintiff's equal protection claims are also dismissed for the reasons previously stated. [Doc. 16 at 11]. The Plaintiff fails to sufficiently allege that he is being treated differently from similarly situated inmates, and that such any such treatment resulted from purposeful discrimination. These claims are therefore dismissed.

### E. Policy Violations

The Plaintiff continues to assert § 1983 claims based on violations of NCDPS policies and procedures. For the reasons stated in the original Order

---

apps.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0715405&searchLastName=torres&searchFirstName=jonathan&searchDOBRange=0&listurl=pagelistoffendersearchresults&listpage=1 (last accessed Jan 11, 2022); Fed. R. Ev. 201.

[2] To the extent that Plaintiff is attempting to assert a conspiracy claim under §§ 1983 and/or 1985, it is too vague and conclusory to proceed. See generally Wiggins v. 11 Kew Gardens Ct., 497 F. App'x 262, 264 (4th Cir. 2012) (addressing § 1983 conspiracy); Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995) (addressing § 1985 conspiracy).

[3] The Plaintiff alleges that his SRG validation resulting from retaliatory false disciplinary charges at Alexander CI. He has sued Alexander CI employees in Torres v. Dye, Case No. 5:20-cv-164-MR.

on initial review [Doc. 16 at 16-17], these claims are dismissed without prejudice for failure to state a claim.

### F. Religious Exercise

The Plaintiff previously asserted claims for interference with his religious exercise in violation of the First Amendment. [Doc. 1 at 22]. These claims were dismissed without prejudice for failure to state a claim. [Doc. 16 at 14-15]. In his Amended Complaint, the Plaintiff appears to allege that the Defendants have violated the First Amendment, Religious Freedom Restoration Act of 1993 ("RFRA") 42 U.S.C. § 2000bb *et seq.*, and Religious Land Use and Institutionalized Persons Act ("RLUIPA") 42 U.S.C. § 2000cc-1, *et seq.,* by enforcing RDU procedures that deny him the ability to practice his religion. [Doc. 21 at 4, 43]."[4]

The RFRA applies only to the federal government, and all of the Defendants in the instant case are state employees. 42 U.S.C. § 2000bb-1(c) (permitting a plaintiff to assert a violation of the statute as "a claim or defense in a judicial proceeding and obtain relief against a government"); 42 U.S.C. § 2000bb-2(1) (defining "government" to include "a branch, department, agency, instrumentality, and official (or other person acting

[4] The Plaintiff appears to allege that Defendants Carver, Bullis, Cothron, and Swink confiscated religious property, and that the other Defendants are liable on a supervisory theory. [Doc. 21 at 4, 35, 44].

under the color of law) of the United States.”)). Accordingly, the RFRA claim is dismissed with prejudice.

To sustain a free exercise claim under the First Amendment, a plaintiff must show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate’s ability to practice his religion withstands a First Amendment challenge when it is “reasonably related to legitimate penological interests.” O’Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). Claims brought under the First Amendment are subject to a less demanding standard of proof than claims brought under RLUIPA, with RLUIPA claims requiring “strict scrutiny instead of reasonableness.” See Lovelace, 472 F.3d at 199 n.8.

Upon careful review of the allegations asserted in the Amended Complaint, the Court concludes that the Plaintiff’s claims for violations of the First Amendment and RLUIPA against all the Defendants are sufficient to pass initial review. Thus, to the extent that the Plaintiff’s religious exercise claim is based on violations of the First Amendment and RLUIPA, it will be allowed to proceed.

### G. Interference with Mail

The Plaintiff also previously asserted claims for interference with his mail. These claims were dismissed without prejudice for failure to state a claim. Upon careful review of the allegations asserted in the Amended Complaint, the Court concludes that the Plaintiff has minimally stated a claim that Defendant Carver violated his First Amendment rights regarding mail. This claim, therefore, is sufficient to pass initial review.

### H. Retaliation

In his Amended Complaint, the Plaintiff asserts a new claim of retaliation. Specifically, the Plaintiff alleges that Defendant Swink refused to transfer him despite a conflict with staff [Doc. 21 at 40-41], and that Defendants Coffee and Ingram mishandled legal materials during a search, used excessive force, and placed him in segregation for filing grievances, filing the instant lawsuit, and objecting to the search [id. at 40-42].

The First Amendment right to free speech "includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." Suarez Corp. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000). Prison officials may not retaliate against an inmate for exercising a constitutional right. See Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir.1978). In order to state a colorable retaliation claim

under § 1983, a plaintiff must allege: "(1) [ ]he engaged in protected First Amendment activity, (2) the defendant[ ] took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendant['s] conduct." Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (quoting Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005)). In the prison context, retaliation claims are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

Taking the allegations as true for the purposes of initial review, and construing all inferences in the Plaintiff's favor, the Court concludes that the Plaintiff has stated a retaliation claim against Defendants Coffee, Ingram, and Swink. This claim has passed initial review.

**I. Excessive Force**

The Plaintiff alleges in the Amended Complaint that, on April 11, 2021, Defendants Coffee and Ingram beat, choked, and tased him after he objected to a search of his cell. [Doc. 21 at 42].

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. Const. Amend. VIII, and protects prisoners from the

"unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component – that the harm inflicted was sufficiently serious – and a subjective component – that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21.

Taking the allegations as true for the purposes of initial review, and construing all inferences in the Plaintiff's favor, the Court concludes that the Plaintiff has stated an excessive force claim against Defendants Coffee and Ingram. This claim has passed initial review.

**J. *Respondeat Superior***

Finally, the Plaintiff asserts a claim of "*respondeat superior.*" [Doc. 21 at 3]. To the extent that the Plaintiff is attempting to hold the Defendants liable for his § 1983 claims under a *respondeat superior* theory, such cannot proceed because *respondeat superior* does not apply to § 1983 actions. See

Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) (vicarious liability is inapplicable to § 1983 actions); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (§ 1983 liability may be premised on supervisory liability, but not *respondeat superior*).

Liberally construing the Amended Complaint, it appears that the Plaintiff may be attempting to state a *respondeat superior* claim under North Carolina law. See 28 U.S.C. § 1367 (addressing supplemental jurisdiction). Under North Carolina law, employers are generally liable for torts committed by their employees who are acting within the scope of their employment under the theory of *respondeat superior*. Matthews v. Food Lion, LLC, 205 N.C.App. 279, 282, 695 S.E.2d 828, 831 (2010). NCDPS, the individual Defendants' employer, is not named as a defendant in the Amended Complaint. Even if NCDPS were named as a defendant, however, the Plaintiff's *respondeat superior* claim would fail. NCDPS is a state agency, and suit against it is barred by sovereign immunity. See Kawai Am. Corp. v. Univ. of N.C. at Chapel Hill, 152 N.C. App. 163, 167, 567, S.E.2d 215, 218 (2002) (North Carolina's Tort Claims Act does not waive sovereign immunity for intentional torts); Harwood v. Johnson, 326 N.C. 231, 238, 388 S.E.2d 439, 443 (1990) ("The Department of Corrections[5] is a state agency created

[5] The Department of Corrections is now known as the Department of Public Safety. Nunn

for the performance of essentially governmental functions, and a suit against this department is a suit against the State."). Therefore, the Plaintiff's *respondeat superior* claim is dismissed with prejudice.

## IV. CONCLUSION

In sum, the following claims have passed initial review: Plaintiff's claims for imposing unconstitutional conditions of confinement, violating his right to freely exercise his religion, and for violating the RLUIPA against Defendants Ishee, Carver, Bullis, Cothron, Swink, Suttle, Ervin, Haynes, Bumgarner, Coffee, Ingram, and Brendle; his claims for retaliation against Defendants Coffee, Ingram, and Swink; his claims for excessive force against Defendants Coffee and Ingraham; and his claim for interfering with mail against Defendant Carver. The Plaintiff's RFRA and *respondeat superior* claims are dismissed with prejudice. The remaining claims are dismissed without prejudice.

The Plaintiff will be granted another opportunity to amend the Complaint in the instant case in light of the dismissal of Case No. 1:21-cv-157 as duplicative. The Court will allow the Plaintiff thirty (30) days to amend his Complaint, if he so chooses, to correct the deficiencies identified in this Order and to otherwise properly state a claim upon which relief can be

---

v. N.C. Dep't of Public Safety, 227 N.C. App. 95, 96, 741 S.E.2d 481, 483 (2013).

granted. Any Second Amended Complaint will be subject to all timeliness and procedural requirements and will supersede the Complaint and Amended Complaint. Piecemeal amendment will not be permitted. Should Plaintiff fail to timely file a Second Amended Complaint in accordance with this Order, the matter will proceed only on the claims described in this Order.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

1. The Amended Complaint [Doc. 21] has passed initial review: against Defendants Ishee, Carver, Bullis, Cothron, Swink, Suttle, Ervin, Haynes, Bumgarner, Coffee, Ingram, and Brendle for imposing unconstitutional conditions of confinement, for violating his right to freely exercise his religion, and for violating the RLUIPA; against Defendants Coffee, Ingram, and Swink for retaliation; against Defendants Coffee and Ingram for the use of excessive force; and against Defendant Carver for interfering with the mail.
2. The Plaintiff's RFRA and *respondeat superior* claims are **DISMISSED WITH PREJUDICE**.
3. The remaining claims are **DISMISSED WITHOUT PREJUDICE**.
4. The Plaintiff shall have thirty (30) days in which to file a Second Amended Complaint in accordance with the terms of this Order. If

the Plaintiff fails to comply, the matter will proceed only on the claims as provided in this Order.

The Clerk of Court is respectfully instructed to mail the Plaintiff a blank § 1983 prisoner complaint form and a copy of this Order.

**IT IS SO ORDERED.**

Martin Reidinger
Chief United States District Judge