IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:21-cv-00068-MR

JONATHAN ANTHONY LEE TORRES,   )
                                )
         Plaintiff,             )
                                )
vs.                             )
                                )
TODD ISHEE, et al.,             )         **ORDER**
                                )
         Defendants.            )
_____ )

**THIS MATTER** is before the Court on initial review of the pro se Second Amended Complaint [Doc. 25]. Plaintiff is proceeding in forma pauperis. [Doc. 8].

**I.    BACKGROUND**

The pro se Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred at the Marion Correctional Institution, where he is still incarcerated. On November 8, 2021, the Complaint passed initial review in part, was dismissed in part, and the Plaintiff was granted the opportunity to amend. [Doc. 16]. The Plaintiff then filed an Amended Complaint adding new claims and Defendants. [Doc. 21]. On February 7, 2022, the Amended Complaint passed initial review on claims of unconstitutional conditions of confinement, for violating his religious

freedom under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA), for retaliation, and for interfering with the mail. [Doc. 23]. The Plaintiff's claims under the Religious Freedom Restoration Act (RFRA) and for respondeat superior were dismissed with prejudice, and the remaining claims were dismissed without prejudice. [Id.]. The Court noted that the Plaintiff had filed a separate action, Case No. 1:21-cv-157-MR, which was dismissed as duplicative of the instant case. [Id. at 3]. It therefore granted the Plaintiff 30 days within which to file a Second Amended Complaint to add any additional claims from Case No. 1:21-cv-157 to the present action. [Id.].

The Second Amended Complaint is now before the Court for initial review. [Doc. 25]. The Plaintiff seeks to add as a Defendant Saint Tapp, a Marion CI unit manager [id. at 16], and to assert new claims for conspiracy under 42 U.S.C. §§ 1983 and 1985(3) [id. at 28], and for assault and battery and the intentional infliction of emotional distress and under North Carolina law [id. at 57-58]. He seeks a declaratory judgment; injunctive relief; compensatory, punitive, and nominal damages; reasonable attorney's fees[1]

---

[1] Attorney fees would not appear to be available, as the Plaintiff is presently unrepresented.

and costs; further relief that the Court deems just and appropriate; and a jury trial. [Id. at 1, 5].

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Second Amended Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. § 1915A.

In its frivolity review, this Court must determine whether the Second Amended Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege

3

facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION[2]

### A. Parties

To the extent that the Second Amended Complaint contains allegations against individuals who are not named as defendants, and which are asserted on behalf of other inmates; they are dismissed for the reasons set forth in the previously-issues Orders on initial review. [See Doc. 16 at 3-5; Doc. 23 at 4].

### B. Conditions of Confinement

The Plaintiff again claims that the Defendants are exposing him to unconstitutional conditions of confinement. [Doc. 25 at 24, 31, 43-52]. For the reasons stated in its prior Orders [Doc. 16 at 5-6; Doc. 23 at 4-5], the Court concludes that the Plaintiff's claims for unconstitutional conditions of confinement, as stated against all of the named Defendants, are sufficient to survive initial review.

### C. Due Process

---

[2] The Second Amended Complaint comprises 123 pages of allegations and attachments. The claims have been liberally construed, reorganized, and restated. Allegations that are vague, appear to be extraneous, or that the Court cannot clearly attribute to any Defendant(s) will not be separately discussed. [See, e.g., Doc. 25 at 27 (referring to "staff")]. Any argument or claim not specifically addressed in this Order has been considered and rejected.

4

The Plaintiff alleges that Defendants Cothron and Swink placed him in the RDU without due process [Doc. 25 at 27, 32-35]; that the RDU Sanction Matrix permits punishment without due process [id. at 35]; that he is not receiving regular classification reviews [id. at 34]; and that RDU has extended the Plaintiff's stay in prison "by not allowing him to earn the correct amount of gain time" [id. at 34-35, 39].

The Plaintiff's allegations about his RDU placement, the lack of regular classification reviews, and the sanction matrix fail to state a claim for the reasons previously stated. [See Doc. 16 at 6-10; Doc. 23 at 5].

Further, the Plaintiff has failed to state a due process claim regarding the amount of gain time he is being allowed to earn. It is well settled that "the federal courts do not sit to supervise state prisons," and "the day-to-day functioning of state prisons . . . are not the business of federal judges." Meachum v. Fano, 427 U.S. 215 (1976). Therefore, "the classifications and work assignments of prisoners . . . are matters of prison administration, within the discretion of the prison administrators, and do not require fact-finding hearings as a prerequisite for the exercise of such discretion." Altizer v. Paderick, 569 F.2d 812, 813 (4th Cir. 1978). Although an inmate may possess a liberty interest when a loss of already-earned statutory good-time credits is at issue, Wolff v. McDonnell, 418 U.S. 539, 557 (1974), he "does

5

not have a liberty interest … in earning future good-time credits at a particular rate," Paylor v. Lewis, 5:12-CT-3103-FL, 2016 WL 1092612, at *12 (E.D.N.C. March 21, 2016). The Plaintiff's allegation that he is not being credited with appropriate gain time for his participation in the RDU program therefore fails to state a due process claim. See, e.g., Boone v. Hopkins, 804 F.2d 677 (4th Cir. 1986) (affirming dismissal of prisoner's claim that he was deprived of accumulative accredited time off for a period of four years, without notice or the benefit of a regular classification hearing); Altizer, 569 F.2d at 812-13 (prisoner was not denied any constitutional right when prison administrators removed him from an assignment to an inmate advisor program, even though such may have implications for a later right to parole); Belk v. Smith, No. 1:10-cv-724, 2014 WL 1835385, at *3 (M.D.N.C. May 8, 2014) (plaintiff's allegation that the defendants arbitrarily limited his ability to work, and therefore earn gain time, while incarcerated did not concern a protected liberty interest). The Plaintiff's due process claims are therefore dismissed.

### D. Equal Protection

The Plaintiff continues to assert that he is being treated differently from close custody general population inmates who are not in RDU. [Doc. 25 at 36-38]. He further claims that Defendants Coffee and Ingram denied him equal protection when they used excessive force against him. [Id. at 36].

6

The Plaintiff has again failed to sufficiently allege that he is being treated differently than similarly situated inmates, or that any such treatment resulted from purposeful discrimination, and therefore, his equal protection claims are dismissed. [See Doc. 16 at 11; Doc. 23 at 5-6].

### E. Policy Violations

The Plaintiff continues to assert that the Defendants violated various NCDPS policies and procedures. [Doc. 25 at 29-30, 34-35, 38-42, 46-47]. These claims are dismissed for failure to state a claim upon which relief can be granted for the reasons previously stated. [See Doc. 16 at 16-17; Doc. 23 at 6-7].

### F. Religious Exercise

The Plaintiff continues to assert that he was denied his religious rights under the First Amendment and the RLUIPA. [Doc. 25 at 69-70]. For the reasons stated in its prior Order [see Doc. 23 at 7-8], the Court concludes that the Plaintiff's RLUIPA and First Amendment claims are sufficient to survive initial review against all of the named Defendants.

### G. Interference with Mail

The Plaintiff continues to allege that Defendant Carver interfered with his right to send and receive mail. [Doc. 25 at 71-74]. This claim passes initial review for the reasons previously stated. [See Doc. 23 at 9].

7

Case 1:21-cv-00068-MR   Document 27   Filed 03/18/22   Page 7 of 16

### H. Retaliation

The Plaintiff continues to allege that Defendant Swink refused to transfer him despite a conflict with staff [Doc. 25 at 61], and that Defendants Coffee and Ingram mishandled legal materials, used excessive force, and placed him in segregation for filing grievances as well as the instant lawsuit [id. at 25-28, 60-63]. He further appears to allege that Defendant Tapp took actions including adverse disciplinary action, segregation, and confiscation of his legal materials in retaliation for the Plaintiff's legal activities and complaints about staff. [Id. at 63-64, 66-69].

The Plaintiff's retaliation claims against Defendants Swink, Coffee, and Ingram pass initial review for the reasons previously stated. [Doc. 23 at 9-10]. The allegations of retaliation against Defendant Tapp are also sufficient to state a claim and therefore pass initial review. [See id.].

### I. Excessive Force

The Plaintiff continues to allege that Defendants Coffee and Ingram used excessive force against him.[3] [Doc. 25 at 28-29, 53-54]. The allegations against these Defendants are sufficient to state a claim for the

---

[3] The Plaintiff's allegation of "failure to protect" is liberally construed as an excessive force claim. [Doc. 25 at 28].

use of excessive force for the reasons previously stated.[4] [Doc. 23 at 10-11].

**J. Conspiracy**

The Plaintiff claims that Defendants Coffee and Ingram conspired against him pursuant to 42 U.S.C. §§ 1983 and 1985(3) as follows: "It's clear that Defendant Coffee and Defendant Ingram conspired to engage in intentional conduct of excessive force to cause Plaintiff harm which resulted in injuries caused by reckless actions, disregard of duties and intentionally deprived Plaintiff of his constitutional rights." [Doc. 25 at 28].

To establish a civil conspiracy under § 1983, a plaintiff must show that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [plaintiff's] deprivation of a

---

[4] Although the Plaintiff describes his alleged injuries and requests for medical care following the use of force incident [see Doc. 25 at 5, 23], it does not appear that the Plaintiff is attempting to state a claim for deliberate indifference to a serious medical need. Even if he intended to do so, that claim would be dismissed because the Plaintiff has not alleged that he had an objectively serious medical need to which any Defendant was subjectively deliberately indifferent. See Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (deliberate indifference requires a showing that the defendant actually knew of and disregarded a serious need for medical care). Further, to the extent that the Plaintiff complains that the investigation into the incident was inadequate [see Doc. 25 at 29], such does not give rise to a § 1983 claim. See generally DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 196 (1989) ("The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."); see, e.g., Vinyard v. Wilson, 311 F.3d 1340, 1356 (11th Cir. 2002) (arrestee had no constitutional right to internal investigation of excessive force claim).

constitutional right." Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996); see Hafner v. Brown, 983 F.2d 570, 576 n.6 (4th Cir. 1992). To establish a "conspiracy to deny equal protection of the laws" under section 1985(3), a plaintiff must prove: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy. Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995) (citing Buschi v. Kirven, 775 F.2d 1240, 1257 (4th Cir. 1985)).

An essential element of any conspiracy to deprive the plaintiff of his constitutional rights is an agreement to do so among the alleged co-conspirators. Ballinger v. North Carolina Ag. Extension Serv., 815 F.2d 1001 (4th Cir. 1987). Without such a meeting of the minds, the independent acts of two or more wrongdoers do not amount to a conspiracy. Murdaugh Volkswagen v. First Nat'l Bank, 639 F.2d 1073 (4th Cir. 1981). Where the complaint makes only conclusory allegations of a conspiracy and fails to demonstrate any agreement or meeting of the minds among the defendants, the court may properly dismiss the complaint. See Woodrum v. Woodward County Okl., 866 F.2d 1121 (9th Cir. 1989); Cole v. Gray, 638 F.2d 804 (5th

10

Cir. 1981). General allegations that defendants entered into an agreement, without sufficiently alleging plausible grounds to infer such an agreement, fails to state a conspiracy claim. Wiggins v. 11 Kew Garden Court, 497 F. App'x 262 (4th Cir. 2012).

The Plaintiff's conclusory allegations fail to state a claim under either § 1983 or § 1985(3). Wiggins, 497 F. App'x at 264. Moreover, with regards to § 1985(3), the Plaintiff has failed to identify any discriminatory class-based animus under which he was allegedly deprived of equal protection. See Section D, *supra*. Accordingly, the Plaintiff's conspiracy claims under § 1983 and § 1985(3) are dismissed for failure to state a claim upon which relief can be granted.

### K.    Supplemental Jurisdiction

Federal district courts may entertain claims not otherwise within their adjudicatory authority when those claims "are so related to claims . . . within [federal-court competence] that they form part of the same case or controversy." 28 U.S.C. § 1367(a). To exercise supplemental jurisdiction, a court must find that "[t]he state and federal claims . . . derive from a common nucleus of operative fact" where a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966). When a district court dismisses all claims

11

Case 1:21-cv-00068-MR    Document 27    Filed 03/18/22    Page 11 of 16

independently qualifying for the exercise of federal jurisdiction, it "ordinarily dismiss[es] all related state claims." Artis v. Dist. of Columbia, 138 S.Ct. 594, 595 (2018); see § 1367(c)(3). A district court may also dismiss the related state claims if there is a good reason to decline jurisdiction. See § 1367(c)(1), (2), and (4).

### 1. Respondeat Superior

First, the Plaintiff continues to assert a claim of respondeat superior. [Doc. 25 at 58-59]. This claim has been dismissed with prejudice [Doc. 23 at 11-13], and cannot proceed for the reasons previously stated.

### 2. Assault and Battery

Construing the Second Amended Complaint liberally, the Plaintiff appears to assert claims for assault and battery against Defendants Coffee and Ingram. [Doc. 25 at 57]

North Carolina assault is an offer to show violence to another without striking him, and battery is the carrying of the threat into effect by the infliction of a blow. See generally Dickens v. Puryear, 302 N.C. 437, 445, 276 S.E.2d 325, 330 (1981). While a civil action for assault is available under North Carolina law against one who uses force for the accomplishment of a legitimate purpose such as justifiable arrest, the use of such force under the given circumstances must be excessive for the claimant to prevail. Myrick v.

12

Cooley, 91 N.C.App. 209, 215, 371 S.E.2d 492, 496 (1988).  "The question of '[w]hether an officer has used excessive force is judged by a standard of objective reasonableness.'"  Jordan v. Civil Service Bd., 153 N.C.App. 691, 698, 570 S.E.2d 912, 918 (2002) (quoting Clem v. Corbeau, 284 F.3d 543, 550 (4th Cir. 2002)).

The Plaintiff's § 1983 excessive force claim has passed initial review against Defendants Coffee and Ingram, and the Plaintiff appears to assert assault and battery claims against them for the same incident. The allegations plausibly state assault and battery claims under North Carolina law and the Court will, therefore, exercise supplemental jurisdiction over the claims at this time.

### 3. Intentional Infliction of Emotional Distress

Finally, the Plaintiff asserts a claim for the intentional infliction of emotional distress under North Carolina law.  [Doc. 25 at 58].

The elements of intentional infliction of emotional distress are: "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress."  Dickens, 302 N.C. at 452, 276 S.E.2d at 335 (citations and quotation marks omitted).  The severe emotional distress required for intentional infliction of emotional distress is "any emotional or mental disorder, such as for example, neurosis, psychosis,

chronic depression, phobia, or any other type of severe or disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." Piro v. McKeever, 245 N.C. App. 412, 416, 782 S.E.2d 367, 371 (2016), *aff'd* 369 N.C. 291, 794 S.E.2d 501 (citations omitted). Conduct is "extreme and outrageous" when it "exceeds all bounds usually tolerated by a decent society." Shreve v. Duke Power Co., 85 N.C. App. 253, 257, 354 S.E.2d 357, 359 (1987) (citation and quotations omitted).

The Plaintiff sets forth the elements of a claim for the intentional infliction of emotional distress, but he fails to support this claim with any factual allegations. Assuming arguendo that the Defendants engaged in extreme and outrageous conduct, the Plaintiff has not alleged that their actions were intended to cause, and did cause, a recognized severe and disabling mental or emotional disorder. [See Doc. 25 at 5, 23 (alleging physical injuries)]. Accordingly, the Court declines to exercise supplemental jurisdiction over the Plaintiff's claim for the intentional infliction of emotional distress at this time.

## IV. CONCLUSION

In sum, the Second Amended Complaint [Doc. 25] has passed initial review: against Defendants Ishee, Carver, Bullis, Cothron, Swink, Suttle,

Ervin, Haynes, Bumgarner, Coffee, Ingram, Brendle, and Tapp for imposing unconstitutional conditions of confinement, for violating his right to freely exercise his religion, and for violating the RLUIPA; against Defendants Swink, Coffee, Ingram, and Tapp for retaliation; against Defendants Coffee and Ingram for the use of excessive force; and against Defendant Carver for interfering with the mail. The Court will exercise supplemental jurisdiction over the Plaintiff's North Carolina assault and battery claims against Defendants Coffee and Ingram. The remaining claims are dismissed as stated in this Order.

In light of the Court's determination that this case passes initial review in accordance with this Order, the Court will order the Clerk of Court to commence the procedure for waiver of service as set forth in Local Civil Rule 4.3 for Defendants Ishee, Carver, Bullis, Cothron, Swink, Suttle, Ervin, Haynes, Bumgarner, Coffee, Ingram, Brendle, and Tapp, who are alleged to be current or former employees of NCDPS.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

1. The Second Amended Complaint [Doc. 25] has passed initial review: against Defendants Ishee, Carver, Bullis, Cothron, Swink, Suttle, Ervin, Haynes, Bumgarner, Coffee, Ingram, Brendle, and

Tapp for imposing unconstitutional conditions of confinement, for violating his right to freely exercise his religion, and for violating the RLUIPA; against Defendants Swink, Coffee, Ingram, and Tapp for retaliation; against Defendants Coffee and Ingram for the use of excessive force; and against Defendant Carver for interfering with the mail.

2. The Court will exercise supplemental jurisdiction over the Plaintiff's North Carolina assault and battery claims against Defendants Coffee and Ingram.

3. The remaining claims are **DISMISSED** as stated in this Order.

4. The Clerk shall commence the procedure for waiver of service as set forth in Local Civil Rule 4.3 for Defendants Ishee, Carver, Bullis, Cothron, Swink, Suttle, Ervin, Haynes, Bumgarner, Coffee, Ingram, Brendle, and Tapp who are alleged to be current or former employees of NCDPS.

**IT IS SO ORDERED.**

Signed: March 17, 2022

Martin Reidinger
Chief United States District Judge